LAND, J.
 

 Plaintiff company sues, to recover a balance alleged to be due by defendant company on the following statement of account:
 

 Contract price of dye machine............... $36,200
 

 Price of machine for balling leaders........ 375
 

 Traveling expenses and board of erector.... 850
 

 $37,425
 

 Payment on account....................$10,000
 

 'Two secondhand indigo vats, purchased by plaintiff from defendant.. 2,200
 

 Price of automatic differentials taken
 

 off machine............................ 1,750
 

 Cash advanced to plaintiff............. 825
 

 Material purchased by defendant for plaintiff ............................... 812 15,587
 

 Balance due................................ $21,838
 

 Defendant claims in reeonvention the following items:
 

 1. Loss through manufacture of defectively woven and dyed cloth .................. $ 7,560 00
 

 2. Extra labor running old dyehouse at night ................................. 3,055 00
 

 3. Excess power used......................... 234 00
 

 4. Excess fuel oil used....................... 1,147 60
 

 5. Machine shop labor and material and express charges ........................ 3,768 93
 

 6. Ten balls of leaders or warps ruined In trying out machine.................. 1,440 00
 

 7. Wages of man needed because of no automatic differentials .................... 13,500 00
 

 Total claimed in reconvention......$30,705 43
 

 On Angust 22,1922, defendant ordered from plaintiff one warp indigo dyeing equipment, price of the equipment to be $35,500, f. o. b. Gastonia, N. O., including the services of a competent man to be sent to the mill of defendant company to assist and supervise in the erection and starting of this equipment, defendant to furnish plaintiff’s erector with all common labor that may be necessary in the placing and handling of same, and to pay the traveling, expenses and board of the erector.
 

 There is also included in the contract “one (1) four nest warp coiler, and all additional heads and parts, which, in connection with our two four nest coilers, will enable us to coil twenty (20) warps from our dry cans”; price of coiler and parts to be $700, f. o. b. Gastonia, N. C.
 

 The shipment of this equipment was to be made by December of the year 1922, and earlier if possible.
 

 The terms of payment were to be 50 per cent, of invoice in 30 days from date of shipment, and balance when equipment is in satisfactory operation.
 

 Item 5 of the specifications for one proposed indigo dyeing equipment for Lane Cotton Mills Company is as follows:
 

 “Side shaft drive and transmission as follows: Side shaft drive will be of the worm and worm gear type to the bottom squeeze rolls, complete with clutches and automatic differential tension
 
 *667
 
 controls to regulate tension of warps between successive squeezes,” etc.
 

 According to the articles of the agreement, plaintiff company contracted to sell and to deliver to defendant, Lane Cotton Mills Company, one 20-warp, automatic, indigo dyeing equipment or machine.
 

 It is clear from the evidence, however, that this was a new type of machine, the first 20-warp continuous dyeing machine ever erected or operated, the necessary chemicals being constantly fed to the vats so as to maintain at all times a uniform strength of dye liquor. The delay occasioned by the old method of dyeing, in recharging vats, and reversing warps, and in running them through the vats a sepond time, is entirely eliminated in the Cocker machine erected for defendant company by plaintiff company.
 

 If dye liquor of the proper strength is conducted by the machine to the vats, it necessarily follows ’ that the denim or cloth will come from the machine dyed with perfect uniformity of color. The Cocker machine may therefore operate mechanically and perfectly, and yet the. product may not be dyed the desired shade, if the necessary strength is wanting in the dye liquor. As far as proper dyeing is concerned, it is plain, therefore, that this is strictly a chemical matter or difficulty, wholly disconnected from, and independent of, the perfect mechanical operation of the Cocker machine.
 

 There is nothing in the contract of plaintiff company that guarantees to defendant company that the vats will be supplied with dye of proper strength to give the desired color to the denims manufactured by defendant company at its cotton mills.
 

 Defendant company bitterly complains because the Cocker machine is equipped with separating rods, which were not called for in the specifications, and is not equipped with automatic differentials, which are required by the specifications.
 

 Upon starting the machine, when completed March 21, 1923, it was found that the-warps became tangled in the dye vats, and it was suggested, therefore, by Mr. Cocker, who-had developed the machine, that separating-rods should be installed in each of the immersion cages.
 

 The president of the Lane Cotton Mills opposed this plan, which was suggested in order to overcome the tangling of the warps,, on the ground that the ingredients of the dye-liquor would corrode the rods, make them rough, and would injure the threads of the warps as they passed through the rods.
 

 This fear upon the part of the president of defendant company never materialized,'as-the warps were uninjured, after the separating rods had been finally installed, after-weeks of unsuccessful schemes to prevent the-tangling of the warps.
 

 The wrangling over the use of separating rods lasted until June 17, 1923, when the machine was operated for the first time with rods installed in all of the immersion cages, and carried the 20 warps through the various immersions to the dry cans, continuously and without trouble.
 

 Although the mechanical operation of the Cocker machine was perfect on June 17,1923, and' operated continuously until about October 25, 1923,8yét another wrangle arose, as soon as the dispute as to the installation of the separating rods had ended, on June 17. 1923, and “international dye experts” were called in by the president of defendant company to solve the chemical difficulties experienced in obtaining the proper color in the dyed warps.
 

 Although the Cocker machine, at the time, was operating in a perfect mechanical manner, it was subjected to excessive pressure by one of these experts, resulting in the gears and bearings of the machine being repeatedly broken, and requiring Mr. Cocker and his erectors to be continuously on the
 
 *669
 
 job repairing the broken parts of the machine.
 

 It finally dawned upon the “international dye. experts” that the trouble was not with the mechanical operation of the Cocker machine at all, but with the strength of the dye liquor, and all of the chemical difficulties of the situation immediately vanished as soon as the dye liquor was corrected by the addition of a larger percentage of caustic soda, and the necessary strength was thereby secured.
 

 It is clear to our minds that this suit is largely a technical battle of experts, as the record contains a mass of mechanical and chemical testimony, which has proven of little or of no practical value in the case.
 

 The expert views and opinions advanced in this litigation were compelled to yield finally to the practical results demonstrated by Mr. Cocker in insisting upon the use of separating rods in the dye vats; while the chemical difficulties involved resulted solely from lack of a proper dye solution, as clearly shown by the evidence, and not from any defect in the mechanical operation of the Cocker machine, whose function is to feed to the vats the dye prepared by the owner of the mill, and not to properly'mix the dye liquor before being fed to the vats by the machine.
 

 The Maginnis Mills are equipped with a Cocker machine with separating rods like the one in this ease. This machine gives perfect satisfaction to its owner. The superintendent of the Proximity Mills, a large manufacturer of denims, testified that separating rods installed in indigo vats do not corrode and do not tear'the warps, and that better results in dyeing are obtained by the use of separating rods than by spreading the warps across the faces of the squeeze rollers — the plan advocated by the president of defendant company in this case.
 

 As we have stated, the Cocker machine operates continuously, without the use of automatic differentials. These differentials were removed in the present case, and it is contended that thereby defendant company has been damaged in the sum of $13,500, because an extra man will have to be employed to operate the compensators for 15 years; i. e., during the life of the machine. •
 

 Plaintiff company has allowed defendant company $1,750 on the price of the differentials taken off of the machine.
 

 Plaintiff does not guarantee in its contract for the sale of the Cocker machine to defendant company that this machine can be successfully operated, without human aid, merely because it is equipped with automatic differentials.
 

 As the president of defendant company has testified that he can make these differentials work perfectly at a nominal expense of from $100 to $200, and as he has made no effort to put them back, his claim of loss or damage to defendant company in the sum of $13,-500, because of the absence of these differentials from the machine, is without any foundation whatever. This disposes of item 7 of the reconventional demand.
 

 Item 1 of this demand for $7,560, fox-loss through manufacture of defectively woven and dyed cloth, is not established sufficiently by the evidence in the case; nor, in our opinion, can plaintiff company be held liable for defectively dyed cloth when such defect has resulted solely from the fault of defendant company in not furnishing a dye liquor of proper strength.
 

 Item 2, for extra labor in running the old dyehouse at night, $3,055, item 3, fox- excess power used, $234, and item 4, for excess fuel used, $1,147.50, should be rejected also.
 

 The old dyehouse of’ the' Lane Mills was dismantled to a large extent in order to provide the necessary site for the new Cocker machine. While the crippling of this old dyeing eqxxipment,' during the experiments
 
 *671
 
 with the Cocker machine, caused the Lane Mills much trouble, plaintiff company likewise suffered loss from the same cause to the extent of thousands of dollars, occasioned by half of the dyehouse being out of commission, and the long and expensive delays resulting therefrom in making trial runs. The Cocker Company, under the conditions existing, had to await the convenience of the Lane Mills in order to pump the dye liquor over into the vats of the Cocker machine, and in order to use the drying cans, which it was the duty of the Lane Mills to furnish un'der their contract.
 

 In view of the fact that plaintiff company has spent between $10,000 and $11,000, as a result of being forced to operate the Cocker machine without separating rods, we do not feel that defendant company should be permitted to charge to plaintiff company this extra expense of operations in the old 'dye-house, occasioned by its own vain experiments.
 

 As to item 5, for machine shop labor and material and express charges, $3,768.93, plaintiff company has allowed a total credit of $1,957.48, instead of $812, the credit appearing in the account sued upon.
 

 The amount of $1,957.48 admitted by plaintiff company includes all labor up to March 29, 1923, and all materials consumed in installing the machine and in repairing defective spiders in the overhead shafts, and excludes, properly in our opinion, all labor and materials used after June 17 in repairing broken squeeze rollers and bearings caused by subjecting the rollers to excessive pressure by Jaeeks, dye expert of defendant company.
 

 As to the express charges included in item 5, the evidence does not satisfy us that they cover transportation charges on any parts of the dye machine for which ifiaintiff company is responsible, but are charges upon various parts for use on other machinery in the Lane Mills, shipped by plaintiff company.
 

 The sixth item is a claim for cost of leaders destroyed in trial runs made on the Cocker machine.
 

 No such charge was made by the Proximity Mills when its Cocker machine was installed, and the contention of the president of defendant company that he makes this claim because the constant tangling of the warps ruined so many leaders should not avail in this case, because of the unreasonable and persistent refusal of defendant company to allow the machine to be run with separating rods. Defendant company through its own captiousness occasioned the loss, which, in our opinion, should not be borne by plaintiff company, as it has liberally shared the costs resulting from purely technical and vain experiments, made in this case at the insistence’of defendant company.
 

 Nor are we of the opinion that the expenses for erector should be restricted' to the one first sent by plaintiff company, as the experiments made with plaintiff’s machine were prolonged to such an extent that the original erector had to be replaced by several others, as a measure of protection, in some degree, to plaintiff’s property.
 

 As the president of defendant company, notwithstanding the objections he has urged, has testified that the Cocker machine is the most advanced and most perfect machine in the world for his purpose, and that he would rather have this machine than any other known to him, we are not impressed favorably with the various items contained in the reconventional demand in this case, nor with the statement, also made by the president of defendant company, that the Cocker machine is worthless and useless to his company.
 

 The reconventional demand of defendant company was rejected in the lower court, and judgment was rendered in favor of plaintiff company in the sum of $20,692.52, with 5 per
 
 *673
 
 cent, per annum interest on $8,100 thereof, from January 8, 1923, until paid; and a like interest on $9,050 thereof, from February 8, 1923, until paid; and a like interest on $3,542.52, from judicial demand until paid —defendant to pay all costs.
 

 It is to be noted that the judgment of the lower court reduces the original claim of plaintiff company for $21,838 to $20,692.52, because of the increase of the allowance for labor and material from $812 in the account sued upon to $1,957.48.
 

 Judgment affirmed.